## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Estate of Casey Goodson, Jr.,

   Plaintiff,

v.

Franklin County, Ohio, *et al.*,

   Defendants

Case No. 2:21-cv-5549
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## DEFENDANTS' MOTION TO STAY

Defendants, Franklin County, Ohio and Michael Jason Meade, move for an order staying these proceedings to avoid the impeachment of Mr. Meade's Fifth Amendment privilege, to avoid prejudice, and to promote judicial economy. The basis for this motion is set forth in the memorandum in support that follows.

Respectfully submitted,

**G. GARY TYACK**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

/s/ *Amy L. Hiers*
Amy L. Hiers (0065028)
ahiers@franklincountyohio.gov
Trial Counsel
John A. Zervas (0043611)
Ashlie Depinet (0089094)
Assistant Prosecuting Attorneys
373 South High Street, 13th Floor
jzervas@franklincountyohio.gov
adepinet@franklincountyohio.gov
Columbus, Ohio 43215-6318
(614) 525-3520
FAX (614) 525-6012

## **MEMORANDUM IN SUPPORT**

I. INTRODUCTION

    A. <u>Procedural Overview</u>

The Estate of Casey Goodson, Jr., (hereinafter, "Plaintiff") initiated the instant civil litigation against Franklin County, Ohio and Michael Jason Meade (hereinafter, respectively, "the County" and "Mr. Meade" and, collectively, "Defendants") on December 2, 2021. Plaintiff alleges that on December 4, 2020, Mr. Meade willfully and maliciously shot Casey Goodson, Jr., to death and that his actions were taken pursuant to the policies, practices, and customs of the County. On the same day, December 2, 2021, a Franklin County, Ohio grand jury indicted Mr. Meade on two counts of murder and one count of reckless homicide based on the same event that forms the basis of the allegations described in Plaintiff's Complaint. (See, Franklin County Common Pleas Case No. 21-CR-5052). A copy of the grand jury indictment is attached hereto as <u>Exhibit A</u>. On December 3, 2021, Mr. Meade filed a notice of removal of the criminal action from the Franklin County Court of Common Pleas to the United States District Court for the Southern District of Ohio. (Case No. 2:21-cv-5587). The case was assigned to Judge Sargus and Magistrate Judge Vascura and remains pending in that venue as of the date of this filing.

    B. <u>Factual Background</u>

The allegations in Plaintiff's Complaint arise from the same event that forms the basis of the criminal charges against Mr. Meade. Plaintiff brings the following claims against Defendants: (1) unconstitutional seizure pursuant to 42 U.S.C. §1983, (2) wrongful death pursuant to Ohio R.C. §2125.02, (3) *Monell* policy claim pursuant to 42 U.S.C. §1983 against the County, (4) assault and battery, (5) willful, wanton and reckless conduct, and (6) survivorship. The claims arise from the death of Mr. Goodson on December 4, 2020. The grand jury indictment sets forth two counts of

2

murder pursuant to Ohio R.C. §2903.02 and one count of reckless homicide pursuant to Ohio R.C. §2903.041 against Mr. Meade for causing the death of Mr. Goodson on December 4, 2020.

II.     LAW AND ANLYSIS

The Court possesses "broad discretion in determining whether to stay a civil action while a criminal action is pending or impending." *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D. Mich. 2007) (citing *Landis v. No. Am. Co.*, 299 U.S. 248, 254-55 (1936)). While the stay of a civil action is an extraordinary remedy, "simultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings." *Id.*, *see also Smith v. First Energy Corp.*, No. 2:20-CV-3755, 2021 WL 507881, at *2 (S.D. Ohio Feb. 11, 2021) ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." (internal citations and quotations omitted)). Courts generally consider and balance the following factors to determine whether a stay of civil proceedings is appropriate:

> (1) the extent to which the issues in the criminal cases overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighted against the prejudice to plaintiffs caused by the delay; (4) the private interests and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627-28 (6th Cir. 2014). In the instant action, all of the factors weigh in favor of granting a stay.

A.     <u>There is Significant Overlap Between the Criminal and Civil Cases</u>

The first factor weighs in favor of granting a stay because the civil complaint and grand jury indictment significantly overlap and relate to the same event that allegedly occurred between Mr. Meade and Mr. Goodson on December 4, 2020. All of Plaintiff's civil claims relate to Defendants' alleged role in the death of Mr. Goodson, for which Mr. Meade was charged with two counts of murder and one count of reckless homicide in the grand jury indictment. The allegations in

3

Plaintiff's Complaint relating to Mr. Meade's conduct, defenses, professional history, training, and public statements will likely be raised in the criminal trial and his defenses will overlap in both cases. *See, e.g.*, *Hunter v. Hamilton Cty.*, No. 1:15-CV-540, 2015 WL 12999662, at *3 (S.D. Ohio Dec. 23, 2015) (this factor weighs in favor of a stay where the allegations and defenses may be raised in both the criminal and civil proceedings).

Similarly, the allegations raised in Plaintiff's Complaint that the County's policies, practices, and customs played a role in violating Mr. Goodson's civil rights and in his death will also overlap with the issues relating to Mr. Meade's conduct, defenses, employment, history, training, and public statements that will be raised in the prosecution of the criminal charges. Given the significant overlap between the facts alleged in the civil complaint and the grand jury indictment, this factor weighs strongly in favor of granting a stay.

      B.     <u>An Indictment has Been Issued</u>

The second factor also weighs in favor of granting a stay. "'A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct[.]'" *E.M.A. Nationwide*, 767 F.3d at 628 (quoting *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp.1134, 1139 (S.D.N.Y. 1995)). This is because "'the likelihood that a defendant may make incriminating statements is the greatest after an indictment has issued'" and any prejudice to the civil plaintiffs "'is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.'" *E.M.A. Nationwide*, 767 F.3d at 628 (quoting *Transworld Mech.*, 886 F.Supp. at 1139). Here, a criminal indictment has been returned based on the same event that forms the basis of the civil complaint. Mr. Meade and the County must be able to present a defense in the civil action without the concern that any statements made will be harmful to Mr. Meade in his simultaneously pending criminal trial. Accordingly, this factor points in favor of granting a stay.

C. The Burden on Plaintiff is Minimal

Defendants do not dispute that Plaintiff has an interest in resolving the instant civil action with efficiency, and the limited stay proposed herein is not intended to prolong the proceedings for any longer than is necessary to ensure that Mr. Meade's constitutional rights are protected and that both Mr. Meade and the County are afforded an opportunity to properly defend their respective interests in this civil action.

The granting of the stay will not undermine Plaintiff's ability to pursue its claims. A stay will not prevent Plaintiff from being able to pursue its allegations because evidence grows stale or witnesses become unavailable. Witnesses that have or will likely testify in the criminal case may also testify in the civil case. The granting of the stay does not create any procedural, evidentiary, or constitutional dilemmas for Plaintiff. However, the denial of the stay creates layers of procedural, evidentiary, and constitutional dilemmas for Mr. Meade and the County.

Moreover, as Mr. Meade has already been indicted, the criminal case will take precedence and be of a higher priority than this civil action to Mr. Meade due to the potential loss of liberty posed by the criminal charges. A relatively short delay poses only a minimal burden to Plaintiff compared to the overarching procedural, evidentiary, and constitutional issues that could result from Mr. Meade's simultaneous defense of the civil and criminal actions. *See, e.g.*, *Auramet Int'l, LLC v. Metals*, No. 16-CV-11177, 2016 WL 4087234, at *4 (E.D. Mich. Aug. 2, 2017) (finding that a 90-day stay would not prejudice plaintiffs). Again, this factor weighs in favor of a stay, as there is no prejudice to Plaintiff's interests created by a stay of this action, especially when considered in light of Mr. Meade's ability to adequately defend himself in the civil case without simultaneously waiving his Fifth Amendment rights and the County's parallel difficulty in engaging in discovery in the civil case.

    D.    <u>The Denial of a Stay Will Severely Prejudice and Burden Defendants' ability to protect their interests in this action and Mr. Meade's ability to defend against the pending criminal charges</u>

        1.    **The denial of a stay will severely prejudice the constitutional rights of Mr. Meade and severely compromise his ability to defend against Plaintiff's civil claims.**

This factor weighs strongly in favor of granting a stay. Here, the Court must "balance the hardships by weighing the harm Plaintiff[] would suffer from the issuance of a stay against the harm that Defendants would suffer from the denial of a stay." *Auramet Int'l*, 2016 WL 4087234 at *4. Further, district courts should "consider 'the extent to which the defendant's fifth amendment rights are implicated.'" *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). As addressed in Section II(C) above, respectfully, the potential burden on Plaintiff is minimal. In contrast, defending the simultaneous civil and criminal actions puts Mr. Meade in a double bind: if he defends himself by responding to discovery in the civil case, there is a risk that such testimony will be used against him in the criminal proceedings. If he invokes his Fifth Amendment rights against self-incrimination, he may relinquish any meaningful defense to the civil claims.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." "This privilege against self-incrimination 'protects against any disclosures the witness reasonably believes could be used in a criminal prosecution [against him/her/them] or could lead to other evidence that might be so used.'" *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1074 (6th Cir. 1990) (quoting *Kastigar v. United States*, 406 U.S. 441 (1972)).

The Fifth Amendment privilege can be invoked in civil and criminal proceedings, but an assertion of the privilege in a civil proceeding could result in an adverse inference. *Id*. "The Supreme Court has held that a civil litigant who chooses to assert his [her/their]

6

Fifth Amendment privilege may not suffer 'the imposition of any sanction which makes assertion of the Fifth Amendment privilege "costly."' *Rothstein v. Steinberg*, No. 5:08CV0673, 2008 WL 5716526, at *2 (N.D. Ohio Dec. 23, 2008) (quoting *Spevack v. Klein*, 385 U.S. 511 (1967)). The exercise of the Fifth Amendment privilege "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). However, any testimony offered by a civil defendant who chooses not to assert the Fifth Amendment privilege could constitute "admission of criminal conduct in their criminal prosecution." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (internal citations and quotations omitted). Put another way, a defendant in parallel civil and criminal proceedings "has no absolute right not to be forced to choose between testifying in a civil matter and asserting his [her/their] Fifth Amendment Privilege." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).

In this case, therefore, a robust civil defense would require Mr. Meade to respond to discovery requests and provide testimony. Given the significant overlap of issues between the civil action and the criminal charges, such a defense would mean waiver of his Fifth Amendment privilege. The Fifth Amendment privilege is a fundamental constitutional right. *See Miranda v. Arizona*, 384 U.S. 436, 460 (1966) ("[T]he constitutional foundation underlying the privilege [against self-incrimination] is the respect a government—state or federal—must accord to the dignity and integrity of its citizens."); *Kastigar*, 406 U.S. at 444-45 (noting that the Fifth Amendment "reflects a complex of our fundamental values and aspirations" which courts are "zealous to safeguard"). Absent a stay, Mr. Meade is faced with the choice to impair a fundamental constitutional right or invoke the privilege and abandon a defense in the instant civil action. Further, Mr. Meade is not the only defendant in this action. Even if Mr. Meade chooses to assert his privilege, as addressed above, the County could produce discovery that could affect or impact Mr.

Meade's decision to invoke his Fifth Amendment right. And, even if the Court were to grant a stay specifically as to Mr. Meade and compel the County to move forward with a protective order, it is unlikely that the civil case would proceed any more quickly for Plaintiff. Additionally, procedural and discovery issues would likely arise for the County, requiring more time from Plaintiff and the Court.

> 2. **The denial of a stay will also severely compromise and prejudice the County's ability to defend Mr. Meade's interest in this action.**

Similarly, the County will also be placed in an untenable position, as it is presently undertaking the defense of Mr. Meade in this case pursuant to R.C. § 2744.07 as he was employed by the Franklin County Sheriff's Office on December 4, 2020. Specifically, R.C. § 2744.07(A)(1), in part, provides the terms under which a political subdivision must provide a legal defense to an employee:

> (A)(1) Except as otherwise provided in division (A)(2) of this section, a political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function.

Any robust defense by the County in this action will need to be weighed against the potential for negatively influencing Mr. Meade's criminal case. This is especially true because of the nature of the *Monell* claim brought against the County. For example, Plaintiff alleges that the County has "engaged in little or no meaningful disciplinary actions in response to Meade's" alleged pattern of misconduct. Although it is not certain at this preliminary stage, engaging in civil discovery while Mr. Meade's criminal trial is pending could hamper the County's ability to adequately address claims of a pattern of misconduct by Mr. Meade or that it failed to properly discipline Mr. Meade.

Mr. Meade's interests in this action may be significantly prejudiced by being unable to actively participate and assist undersigned counsel with the defense of these claims, especially during ongoing discovery, including depositions. For example, until the criminal charges are resolved or a decision by Mr. Meade regarding his Fifth Amendment right against self-incrimination is made, any deposition testimony that Mr. Meade could provide about the County's practices, policies, and customs that may bolster the County's defense may not be available. Further, a decision regarding invocation of the Fifth Amendment privilege may not be made until Mr. Meade's criminal trial is underway.

The potential procedural, evidentiary, and constitutional burdens imposed upon and prejudices created by requiring Defendants to conduct the defense of Plaintiff's claim while Mr. Meade is simultaneously defending serious criminal charges arising from the same nucleus of alleged facts warrants the granting of a stay.

E. The Court's Interest in Judicial Economy is Served by a Stay

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) (quoting *Landis v. North American Co.,* 299 U.S. 248, 254, (1936). Here, the court's interest in judicial economy, both for itself, counsel, and litigants, is served by a stay for several reasons. First, resolution of the criminal case could narrow the issues in dispute in the civil action, given that both are based on the same set of alleged facts. Such a narrowing could not only make the civil action less complex, it could also potentially lead to a settlement that would not be possible prior to that point. Second, in the absence of a stay, it is likely that discovery complications will arise with respect to Fifth Amendment issues, which will require Court intervention and management. Finally, at the time of the filing of this motion, this civil action and a separate civil action involving a notice of removal of

the criminal matter from state court to federal court are both pending in the same venue and both have been assigned to Magistrate Judge Vascura. A stay would improve the Court's ability to treat the actions with the time and separation needed for the proper administration of justice.

F. <u>The Public Interest is Served by a Stay</u>

The public has two competing interests in this matter, both of which would be served by a brief stay in the civil action pending the resolution of the criminal case. First, the public has an interest in the prompt resolution of disputes. The timing of the criminal case is subject to speedy trial requirements, making any stay relatively finite and reasonably brief. Accordingly, the public interest in speedy resolution of these disputes will not be hindered by the stay requested herein. Second, the public has a significant interest in ensuring that fundamental constitutional rights are protected by the courts. Here, a stay would allow Mr. Meade to defend this civil action without also waiving a fundamental constitutional right against self-incrimination.

III. CONCLUSION

Based on the foregoing, all of the factors weigh in favor of a stay of the civil action pending resolution of Mr. Meade's criminal charges. Accordingly, Defendants respectfully request this Court to enter a stay of the civil case until the criminal proceedings are resolved.

Respectfully submitted,

**G. GARY TYACK**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

/s/ *Amy L. Hiers*
Amy L. Hiers (0065028)
ahiers@franklincountyohio.gov
Trial Counsel
John A. Zervas (0043611)
Ashlie Depinet (0089094)
Assistant Prosecuting Attorneys
373 South High Street, 13th Floor
jzervas@franklincountyohio.gov
adepinet@franklincountyohio.gov

       Columbus, Ohio  43215-6318
       (614) 525-3520
       FAX (614) 525-6012

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically this 22nd day of December, 2021.

Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

       /s/ *Amy L. Hiers*
       Amy L. Hiers (0065028)