IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | : | |
|---|---|---|
| **ESTATE OF CASEY GOODSON, JR.,** | : | Case No. 2:21-cv-05549 |
| | : | |
| Plaintiff, | : | Judge Michael H. Watson |
| | : | Magistrate Judge Chelsey M. Vascura |
| v. | : | |
| | : | |
| **FRANKLIN COUNTY, OHIO,** *et al.*, | : | |
| | : | **PLAINTIFF'S RESPONSE IN** |
| | : | **OPPOSITION TO DEFENDANTS'** |
| Defendants. | : | **MOTION TO STAY** |
| | : | |
| | : | |

Plaintiff Estate of Casey Goodson, Jr., by and through counsel, hereby responds in opposition to the Motion to Stay filed on behalf of Defendants Franklin County, Ohio and Michael Jason Meade. The law is clear that indefinite stays like the one requested by Defendants are an extreme measure, only to be granted when absolutely necessary, that effectively rob Plaintiff of their day in court. Defendants have not and cannot overcome the burden necessary to justify a stay of these proceedings and, for the reasons set forth below, Plaintiff urges the Court to deny Defendants Motion.

  **I. FACTS**

On December 4, 2020, Defendant Meade shot twenty-three-year-old Casey Goodson, Jr. from behind six times without provocation or justification. Mr. Goodson was killed, and his entire family has been devastated in the aftermath of these events. Following this tragedy, information came to light regarding Defendant Meade's background, and it quickly became clear that Defendant Meade had a long history of misconduct, which the Franklin County Sherriff's Office repeatedly and systematically failed to adequately address. Defendant Meade's history is replete

with firearms and marksmanship training, but dangerously lacking in de-escalation, ethics, or other non-violent instruction. This is reflected in Defendant Meade's behavior on the job, including a restriction from contact with inmates, and his "love" for his job, which be believed included a responsibility "to hunt people." On December 2, 2021, just shy of a year after Mr. Goodson was killed, a grand jury indicted Defendant Meade for the murder of Mr. Goodson. That same day, Mr. Goodson's Estate brought the above-captioned civil rights suit against Defendant Meade and Franklin County for unconstitutional seizure, wrongful death, assault and battery, negligence, and survivorship, as well as a *Monell* policy claim. On December 22, 2021, Defendants filed this Motion to Stay, based on the unsupported assertion that Defendant Meade's criminal trial will be unduly burdened by the concurrent continuation of this civil suit against Defendant Meade and Franklin County.

## II.     LAW & ARGUMENT

It is well-established law that "there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014), quoting *S.E.C. v. Novaferon Labs, Inc.*, 6th Cir. No. 91-3102, 1991 WL 158757 (Aug. 14, 1991). The mere existence of parallel criminal proceedings alone is not enough to support a request for stay. *In re Scrap Metal Antitrust Litig.*, N.D. Ohio No. 1:02-cv-0844, 2002 WL 31988168, at *5 (Nov. 7, 2002), citing *Standard Sanitary Mfg. Co. v. United States*, 226 U.S. 20, 51-52 (1912). In fact, such stays are considered "an extraordinary remedy" and district courts have "broad discretion" in considering whether such a remedy is appropriate under the circumstances. *Id*. When making such decisions, district courts will undertake a six-factor balancing test to determine whether a stay of civil proceedings is warranted. These factors include:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including

> whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id*. Each and all of these factors must be considered and no one factor is determinative of the entire analysis. This "balance of hardships" between the movant and nonmovant is the most important factor, but courts must also consider whether or not granting a stay serves the "economical use of judicial time and resources" as well. *Id*. at 628, quoting *Int'l Bhd. of Elec. Workers v. AT&T Network Sys.*, 6th Cir. No. 88-3895, 879 F.2d 864, 1989 WL 78212, at *8 (Jul. 17, 1989). The party seeking the stay carries the burden to demonstrate a "pressing need for delay" and must establish "that neither the other party nor the public will suffer harm from entry of the order." *Ohio Environmental Council v. U.S. Dist. Court, Southern Dist. Of Ohio, Eastern Div.*, 565 F.2d 393, 396 (6th Cir. 1977). In light of these factors and the present circumstances, a stay of all civil proceedings until complete resolution of the related criminal case is neither necessary nor appropriate.

      a. <u>Defendants' Fifth Amendment Concerns Are Not Sufficient to Warrant Complete Stay of Civil Proceedings.</u>

In their Motion, Defendants rely heavily on the fifth amendment implications of overlapping criminal and civil proceedings, claiming that the potential for self-incrimination is too great and seemingly asserting that this alone outweighs all other considerations. Courts will certainly consider whether the defendant's fifth amendment rights are implicated by denial of a stay. *F.T.C. v. E.M.A.* at 627. But the presence of fifth amendment concerns does not automatically necessitate a stay. *Smith v. FirstEnergy Corp.*, S.D. Ohio No. 2:20-cv-3755, 2021 WL 507881, *4 (Dec. 23, 2015) (denying broad motion to stay, holding that more narrowly tailored stay or other discovery process protections could sufficiently protect fifth amendment rights). Without more,

3

the mere "blanket assertion of the privilege against self-incrimination…does not provide a sufficient basis" for such a request. *United States v. Certain Real Property 566 Hendrickson Blvd.*, 986 F.2d 990, 997 (6th Cir. 1993). Given the extreme nature of a complete stay of civil proceedings, the moving party must demonstrate that potential discovery challenges presented by fifth amendment concerns outweigh the nonmoving party's interest in resolving the case swiftly. *Smith v. FirstEnergy*, at *4.

Here, Defendants' Motion overestimates the depth and breadth of civil discovery that would be properly shielded by the fifth amendment. For example, fifth amendment protections generally do not encompass the production of documents. *In re Scrap Metal Antitrust Litig.*, N.D. Ohio No. 1:02-cv-0844, 2002 WL 31988168, at *5 (Nov. 7, 2002), citing *U.S. v. Hubbell*, 530 U.S. 27, 35-36 (2000). It is well-settled law that "Fifth Amendment privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him." *Couch v. U.S.*, 409 U.S. 322 (1973). Indeed, the fifth amendment merely protects an individual "from producing the evidence, but not from its production." *Id*. Likewise, this privilege is only enjoyed by individual persons, not organizations or other entities, and does not protect the papers and effects of such an entity, even if in possession of an individual. *See, e.g., Kirby Developments, LLC v. XPO Global Forwarding, Inc.*, S.D. Ohio No. 2:18-cv-500, 2018 WL 6075071, *6 (Nov. 20, 2018), citing *U.S. v. White*, 322 U.S. 694, 698 (1944). This is especially true where other remedies are available to protect the moving party's interest. Potentially incriminating testimony can be sufficiently shielded from fifth amendment violations via other remedies, such as a protective order prohibiting the use of such testimony in any criminal proceeding or a limited stay only as to the deposition of a particular defendant. *Smith v. FirstEnergy*, at *4, citing *Mooney by*

4

*& through Mooney v. Wallace*, W.D. Tenn. No 04-1190-T-P, 2005 WL 8156550, at *1 (Apr. 1, 2005).

In other words, to the extent the fifth amendment is implicated in this case, it would only potentially protect Defendant Meade from being compelled to personally provide testimony that may incriminate him but would have no bearing on the bulk of the discovery process. Plaintiff's collection of relevant documents from Defendant Meade, the County, or other sources; deposition of Defendant Meade regarding issues not related to the day of Mr. Goodson's killing; deposition of experts, other witnesses, and County officials; and any discovery regarding claims against the County itself do not implicate Defendant Meade's fifth amendment rights. A stay as to all Defendants covering the entirety of this proceeding is unnecessary and excessive. Plaintiff's interest in moving forward with discovery while evidence is still available and witness memories are fresh is a valid interest that must also be protected. Defendants' fifth amendment concerns can just as easily be addressed via far less extreme remedies, adjustments to the discovery schedule, or a limited stay delaying only the deposition of Defendant Meade.

      b. <u>Defendants' Requested Stay is Too Indefinite in Time and Therefore Unduly Prejudices Plaintiff.</u>

In their Motion, Defendants erroneously assert that, while granting this stay "does not create any procedural, evidentiary, or constitutional dilemmas for Plaintiff," both Defendant Meade and the County will be unduly prejudiced by concurrent criminal and civil proceedings. But this does not reflect the law or the facts. If parties to a civil action wait the months (or even years) that it may take for a criminal action to be resolved in its entirety, "there is a particularly harmful risk of spoliation of evidence, failed memories, or witness availability." *Smith v. FirstEnergy Corp.*, 2021 WL 507881, quoting *Johnson, next friend of C.P.S. v. Hamilton Cty. Gov't*, No. 1:19-CV-329, 2020 WL 6479558, at *3 (E.D. Tenn. Feb. 26, 2020) (internal citations

5

omitted). Even where the civil action is in early stages, a request for stay that is not appropriately limited in time is effectively a request "to stay the case indefinitely" and "tantamount to denying Plaintiffs their day in court." *Id.*, quoting *Newell v. Cty. of Wayne*, No. 12-cv-14928, 2013 WL 4613613, at *5 (E.D. Mich. Aug. 29, 2013) (internal citations omitted). As such, requests for indefinite stay of civil actions are highly disfavored. *Id.* at *3 (holding that stay of civil proceedings for duration of criminal action, without further limitation in time, was improperly indefinite).

Defendant Meade killed Casey Goodson on December 4, 2020. As of this filing, we are already nearly fourteen months removed from this date. Given that Plaintiff's claims implicate Franklin County Sherriff's Office practices dating back years prior to Mr. Goodson's death, discovery is likely to already be hampered by missing documents, fuzzy memories, and key witnesses who have become unavailable in the intervening years. Further delay will only serve to exacerbate these challenges. A complete stay at this juncture, less than one month after Defendant Meade was indicted and with no trial date in sight, is especially concerning. Speedy trial requirements aside, there is no guarantee of how quickly these criminal proceedings will be fully resolved. One cannot ignore the potential for a longer-than-average criminal trial or an appeals process that drags on for years, particularly given Covid delays in the courts. Defendants' open-ended request for stay, limited in time only by "resolution of the criminal case," essentially leaves Plaintiff without civil recourse indefinitely.

    c. <u>The Public Has an Interest in Expeditious Resolution of the Civil Suit.</u>

Though Defendants assert that the inclusion of a *Monell* claim in Plaintiff's Complaint weighs in favor of a stay, this position does not properly consider the public interest in the patterns of conduct contemplated by such a claim. Courts are clear that "the public also has an interest in expeditious litigation," particularly where the matters at issue in such litigation might negatively

impact the public while these proceedings languish on the docket. *Smith v. FirstEnergy*, at *4 (denying stay of civil proceedings which implicated ongoing "fraudulent scheme potentially affecting Ohio residents and businesses," in part because this potential impact substantiated a vested public interest in quick resolution of the underlying civil claim). Plaintiff's *Monell* claim–and, in fact, the entirety of this civil suit–seeks to address an ongoing "pattern of misconduct," including but not limited to, improper hiring and training practices; insufficient discipline and control of deputies engaging in repeated acts of excessive force up to and including unjustified shootings; failure to properly train or supervise deputies regarding proper use of firearms; and more. That this litany of alleged misconduct may also include Defendant Meade, individually, does not refute the very real possibility that Franklin County Sheriff's Office deputies continue to engage in the same alleged dangerous, reckless, and unconstitutional conduct at issue in Defendant Meade's criminal case. Mr. Goodson's death is a tragedy, in and of itself, and the public certainly has a general interest in ensuring those responsible are held to account, as with any untimely death. But the public also has an interest in preventing additional harm. The alleged pattern of behavior exhibited by Franklin County Sheriff's Office potentially presents a threat to the safety of the entire community and, as such, the public interest in expeditious resolution of these claims cannot be overstated.

    d. <u>A Stay Does Not Further the Economical Use of Judicial Time and Resources.</u>

As a general matter, the "convenience of the courts is best served when motions to stay proceedings are discouraged." *Smith v. FirstEnergy*, at *4. Ultimately, how a stay would impact this Court's time and resources is entirely up to the Court's discretion. However, Plaintiff rejects the unsupported assertion that the Court's interest is necessarily served by a stay. In fact, when a movant is requesting what essentially amounts to an indefinite stay, the Court's interests are

particularly likely to weigh in favor of denial of a stay. *Id*. at *4. Plaintiff also rejects Defendants' contention that the outcome of the criminal trial will necessarily "narrow" the issues in the civil proceeding. Plaintiff's civil claims go far beyond the scope of the criminal case, particularly with respect to Defendant Franklin County, which is not a party to the criminal case. This contention also seemingly ignores that these civil claims are subject to differing scope, standards of proof and evidentiary rules than the criminal charges. Neither conviction nor acquittal of Defendant Meade on the murder charges pending against him in criminal court would preclude Plaintiff from full-throated pursuit of the civil and constitutional rights claims at issue here.

    e. <u>Overlap Between Criminal Case and Civil Case is Not Sufficient to Warrant Stay.</u>

  Lastly, although Plaintiff does not deny the existence of overlap between Defendant Meade's criminal case and this civil matter, Defendants broad assertion that "[a]ll of Plaintiff's civil claims relate to Defendants' alleged role in the death of Mr. Goodson" is not accurate. Plaintiff's claims are, indeed, rooted in the killing of Mr. Goodson and implicate many of the same facts as Defendant Meade's criminal case. However, this civil proceeding also turns on many other facts not relevant to the criminal case, such as: the losses suffered by Mr. Goodson's family in the wake of his killing; Defendant Meade's disciplinary and personnel history, general hiring, supervision, discipline, and control practices of the Franklin County Sheriff's Office; use of force policies and firearms training; and internal investigation practices and the "code of silence" culture within the Franklin County Sheriff's Office in response to misconduct allegations. Defendant Meade's criminal trial may touch on some of these issues as they relate to him, individually, but these broader implications of Franklin County's policies and procedures are a matter for the civil proceedings alone. Particularly with respect to Defendant Franklin County, which is not a party to the criminal case, a claim of "overlap" cannot survive scrutiny.

**III.     CONCLUSION**

In light of the above, Defendants' Motion to Stay is improper and should be denied. The interests of Plaintiff, the public, and this Court all favor denial of the requested stay, and the supposed burdens set forth by Defendants in their Motion to Stay are far from sufficient to outweigh these considerations. This is especially evident given the myriad alternate remedies available to address each and all of Defendants' stated concerns. Plaintiff respectfully urges the Court to deny Defendants' Motion to Stay, set an appropriate schedule, and allow this case to proceed.

</p>
<p style="margin-left: 50%;">
__/s/ Sarah Gelsomino_____<br>
Sarah Gelsomino (0084340)<br>
Jacqueline Greene (0092733)<br>
Marcus Sidoti (0077476)<br>
Friedman, Gilbert + Gerhardstein<br>
50 Public Square, Suite 1900<br>
Cleveland, OH 44113<br>
Telephone:    (216) 241-1430<br>
Facsimile:     (216) 621-0427<br>
E-Mail:         sarah@fggfirm.com<br>
                      jacqueline@fggfirm.com<br>
                      marcus@fggfirm.com<br>
<br>
Sean L. Walton (0088401)<br>
Chanda L. Brown (00810076)<br>
Walton + Brown LLP<br>
395 East Broad Street, Suite 200<br>
Columbus, Ohio 43215<br>
Telephone:    (614) 636-3476<br>
Facsimile:     (614) 636-3453<br>
E-Mail: swalton@waltonbrownlaw.com<br>
              cbrown@ waltonbrownlaw.com<br>
<br>
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed this 12th day January, 2022. Notice of this filing will be automatically sent by the Court's electronic filing system and may be accessed there by all parties.

                                                       ____/s/ Sarah Gelsomino_____
                                                       Sarah Gelsomino (0084340)