UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Estate of Casey Goodson, Jr.,

    Plaintiff,

v.

Franklin County, Ohio, *et al.*,

    Defendants.

Case No. 2:21-cv-5549

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Defendants move to stay this case pending the conclusion of Michael Jason Meade's ("Meade") criminal trial in state court. Mot., ECF No. 6. Plaintiff opposes a stay. Resp., ECF No. 7. For the following reasons, Defendants' motion is **GRANTED**.

### I.    FACTS

This case arises from the tragic, fatal shooting of Casey Goodson, Jr. ("Goodson Jr.") by Meade. Compl., ECF No. 1.

Plaintiff alleges that, on December 4, 2020, Goodson Jr. was returning home from a dentist appointment and was bringing lunch to his grandmother's house. Compl. ¶ 2, ECF No. 1. Meade, who was a Franklin County Sheriff's deputy at the time, was in Goodson Jr.'s neighborhood on a task force mission entirely unrelated to Goodson Jr. *Id.* ¶¶ 43–44. Meade's mission was unsuccessful, and as he disbanded from the rest of the task force, Meade

allegedly "targeted and hunted" Goodson Jr., following him to his grandmother's house and killing him "without justification." Compl. ¶¶ 5, 44–7, 50, ECF No. 1. Plaintiff further alleges "Meade was a violent deputy who had a history of violating established departmental policy regarding the use of force" and that Franklin County, Ohio, failed to, *inter alia*, properly train Meade. *Id.* ¶¶ 17, 19.

In this civil case, the Estate of Casey Goodson, Jr. ("Plaintiff") asserts the following six causes of action: (1) unconstitutional seizure pursuant to 42 U.S.C. § 1983 (against Meade); (2) wrongful death pursuant to Ohio Revised Code § 2125.02 (against Meade); (3) a municipal liability claim pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services.*, 436 U.S. 658 (1978) (against Franklin County) based on Meade's unconstitutional seizure; (4) assault and battery under Ohio law (against Meade); (5) willful, wanton, and reckless conduct under Ohio law (against Meade); and (6) survivorship action under Ohio law (against Meade). Compl., ECF No. 1.

Meade has also been criminally charged for killing Goodson Jr.; he was indicted in the Franklin County Court of Common Pleas for two counts of murder and one count of reckless homicide. Meade removed the criminal case to this Court, but another judge remanded it back to state court for lack of jurisdiction. *Ohio v. Meade*, No. 2:21-cv-5587, 2022 WL 486294, at *7 (S.D. Ohio Feb. 17, 2022) (Sargus, J.). The criminal case is scheduled for trial on May 12, 2022.[1]

---

[1] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the docket in the criminal case.

In the instant motion, Defendants ask the Court to stay the civil case until the conclusion of Meade's criminal trial to permit Meade to participate fully in the civil litigation while protecting his Fifth Amendment right against self-incrimination and to avoid hardship to Franklin County. Mot., ECF No. 6.

## II. STANDARD OF REVIEW

"[N]othing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment, and there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (cleaned up). Accordingly, "district courts have broad discretion in determining whether to stay a civil action while a criminal action is pending or impending." *Id.* (internal quotation marks and citation omitted).

In most circumstances, a "stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy." *United States v. Ogbazion*, No. 3:12-cv-95, 2012 WL 4364306, at *1 (S.D. Ohio Sept. 24, 2012) (internal quotation marks and citation omitted). Courts have nonetheless stayed civil proceedings until the completion of a parallel criminal proceeding when the "interests of justice seemed to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (citations omitted).

Generally, district courts consider the following six factors when determining whether to stay civil litigation during parallel criminal proceedings:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (internal quotation marks and citation omitted). District courts should also consider the "extent to which the defendant's fifth amendment rights are implicated" and "whether granting the stay will further the interest in economical use of judicial time and resources." *Id.* at 627–28 (internal quotation marks and citations omitted). Of these eight total factors, the most important is the "balance of the hardships" of each party. *Id.* at 628.

The burden is on the moving party to "show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Env't Council v. United States Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977).

### III. ANALYSIS

The Court reviews each of the eight factors, in turn.

### A. The extent to which the issues in the civil and criminal cases overlap

The first factor weighs in favor of granting the stay. This civil case is "rooted in the killing of Mr. Goodson, [Jr.,]" Pl.'s Resp. 8, ECF No. 7, and Meade's killing of Goodson Jr. is also the basis of the murder and homicide charges against Meade. There is thus significant overlap between the issues involved in the civil and criminal cases. *E.g., McCullaugh v. Krendick*, No.

5:07CV2341, 2009 WL 2929306, at *2 (N.D. Ohio Sept. 9, 2009) ("[T]here is no question that there is a significant overlap between the alleged criminal investigation and the civil action. They arise from the same set of facts and indeed those same facts generated state criminal proceedings against the defendant deputies."); *Coley v. Lucas Cty., Ohio*, No. 3:09 CV 0008, 2011 WL 5838190, at *3 (N.D. Ohio Nov. 8, 2011) ("It is undisputed that the core of both cases arises from events occurring while decedent was in defendants' custody that ultimately culminated in decedent's death.").

Plaintiff argues, however, that the civil proceedings will involve additional issues not relevant to the criminal case such that this factor should not support granting a stay. Resp. 8, ECF No. 7. Further, because Franklin County is not a defendant in the criminal case, Plaintiff asserts this factor cannot support staying Plaintiff's claims against Franklin County. *Id.*

The Court disagrees. Complete overlap is not necessary, and, because both cases stem from Meade's killing of Goodson Jr., "there is a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues." See *Smith v. FirstEnergy Corp.*, No. 2:20-cv-3755, 2021 WL 507881, at 3* (S.D. Ohio Feb. 11, 2021) (quoting *McCullaugh*, 2009 WL 2929306, at *2). In any event, it is likely that most of the additional issues to which Plaintiff alludes will, in fact, come into play in Meade's criminal trial, even if only tangentially. *Cf. Hunter v. Hamilton Cty.*, No. 1:15-cv-540, 2015 WL 12999662, at *3 (S.D. Ohio Dec. 23, 2015) ("It appears that the policies,

practices and individuals involved in the criminal case are the same as those involved in this civil action."). Moreover, even though the criminal proceeding is against only Meade—while the civil proceeding is against both Meade and Franklin County—Plaintiff's claims against Franklin County stem from Meade's actions. The criminal case against Meade may therefore impact Plaintiff's claims against Franklin County. *See Sikon v. Carroll Cty., Ohio*, No. 5:20-cv-0674, 2020 WL 8838043, at *2 (N.D. Ohio June 12, 2020) ("[T]here can be no doubt that all defendants' liability is predicated on Baker's actions.").

Accordingly, this factor weighs in favor of granting Defendants' motion. *E.g., Chao v. Fleming*, 498 F. Supp. 2d 1034, 1039 (W.D. Mich. 2007) (finding factor satisfied where "the substantive factual and legal issues would be almost identical."); *Auramet Int'l, LLC v. Metals*, No. 16-CV-11177, 2016 WL 4087234, at *3 (E.D. Mich. Aug. 2, 2016) ("Since there is significant overlap between the criminal and civil cases, and criminal proceedings have begun against [the defendant], the first two factors favor a stay." (citation omitted)); *Sikon*, 2020 WL 8838043, at *2 (finding factor weighed "heavily in favor of granting a stay" where the plaintiff's civil suit and the criminal investigation "both ar[o]se out of Baker's use of deadly force against Sikon"); *United States SEC v. Abdallah*, 313 F.R.D. 59, 64 (N.D. Ohio 2016) (finding the facts that the criminal and civil cases were "virtually identical" and would "likely involve many of the same issues, witnesses, and evidence" weighed in favor of a stay).

### B. The status of the case

With respect to the second factor, courts generally recognize "that the case for a stay is strongest where the defendant has already been indicted[.]" *E.g.*, *Chao*, 498 F. Supp. 2d at 1037 (citations omitted); *accord Smith*, 2021 WL 507881, at *2 (citations omitted). This is for two reasons: "first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *E.M.A. Nationwide, Inc.*, 767 F.3d at 628 (internal quotation marks and citation omitted); *accord Smith*, 2021 WL 507881 at *2 (citation omitted).

In this case, Meade has already been indicted for the same conduct at issue in this civil case, and his criminal trial is scheduled to commence on May 12, 2022. *See* March 3, 2022 Docket Entry, Franklin County Common Pleas Case No. 21-CR-5052. Therefore, this factor also weighs in favor of a stay.

### C. The interest of, and prejudice to, Plaintiff

The third factor analyzes any burden a stay puts on Plaintiff.

Undoubtedly, Plaintiff has an interest in concluding this case and thereby obtaining some semblance of closure regarding these tragic events. *McCullaugh*, 2009 WL 2929306, at *2 ("Plaintiffs have a strong personal interest in learning all of the facts surrounding the death of their son, regardless of what those facts may ultimately demonstrate."); *Sikon*, 2020 WL 8838043, at *3

(finding the plaintiff's interests "is perhaps of particular importance in this case because plaintiff lost a family member"). The Court is mindful of the effects a stay would have on Plaintiff and does not take those effects lightly.

Additionally, Plaintiff argues that a stay would create a significant burden because "discovery is likely to already be hampered by missing documents, fuzzy memories, and key witnesses who have become unavailable in the intervening years[,]" and "[f]urther delay will only serve to exacerbate these challenges." Resp. 6, ECF No. 7.

But Plaintiff provides "no specific examples making this case any more compelling than other cases in which a stay is sought." *Chao*, 498 F. Supp. 2d at 1040. Moreover, "[p]laintiff['s] concern that evidence will be lost is somewhat lessened because considerable evidence [will be] adduced at the criminal trial and testimony [will be] presented and preserved." *Coley*, 2011 WL 5838190, at *3; *accord Trs. of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ("[T]he loss of evidence may not be as serious as plaintiffs believe since the resolution of the Criminal Case may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can later be used in the civil action." (citation omitted)).

Accordingly, Plaintiff has a significant interest in prompt resolution of the case but will not be prejudiced by a stay. The Court therefore concludes this factor is neutral.

### D. The interest of, and burden on, Defendants

The fourth factor requires the Court to consider the burden on Defendants caused by denying a stay. Defendants assert the denial of a stay will burden both Meade and Franklin County; the Court considers each argument.

#### 1. The burden on Meade

Meade's primary argument is that a failure to stay this civil case would result in a Hobson's choice. That is, Meade could invoke his Fifth Amendment privilege during discovery in this case, thereby risking an adverse inference against him. Or, he could defend the civil case and thereby risk incriminating himself for purposes of the criminal trial.

The Court agrees. Notably, a "defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995); *accord, e.g., Ogbazion*, 2012 WL 4364306, at *2 (citation omitted). However, given the fundamental importance of the Fifth Amendment, "courts often stay a civil case where the defendant may be compelled to answer questions in the civil case that he would have the right to refuse to answer in the criminal case." *Smith*, 2021 WL 507881, at *3 (internal quotation marks and citation omitted). The Fifth Amendment concerns are paramount here, where Meade faces criminal charges for murder and homicide based on the same conduct at issue in this civil case. *See, e.g., Baird v. Daniels*, No. 1:12-cv-945, 2013 WL 493236, at *3 (S.D. Ohio Feb. 7, 2013) ("The strongest case for

deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil . . . action involving the same matter." (internal quotation marks and citation omitted)); *Transworld Mech., Inc.*, 886 F. Supp. at 1140 (finding the plaintiffs' interests "trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case"); *Ogbazion*, 2012 WL 4364306, at *2 ("[I]n light of the fundamental nature of the Fifth Amendment privilege, the Court finds that the fourth factor weighs in favor of a stay."); *Auramet Int'l*, 2016 WL 4087234, at *4 ("The right against self-incrimination is a foundational protection that individuals have against the government." (citation omitted)).

Plaintiff argues Meade's Fifth Amendment concerns can be addressed by denying a stay but limiting discovery. The Court is not convinced that limited discovery would offer adequate protection. Moreover, limited discovery would be inefficient and a waste of resources.

In addition to the Fifth Amendment, Meade also has a strong interest in focusing his efforts on defending against the serious accusations in the criminal case rather than attending simultaneously to both lawsuits. *E.g., Hunter v. Hamilton Cty.*, No. 1:15-CV-540, 2015 WL 12999662, at *4 (S.D. Ohio Dec. 23, 2015) ("[R]esponding to the 12 motions to dismiss filed by the various defendants in this case risks diverting plaintiff's focus and resources from her imminent criminal trial.").

For both reasons, Meade has a strong interest in staying the civil proceeding until the completion of his criminal trial and would be burdened by the denial of a stay.

### 2. The burden on Franklin County

For similar reasons, the fourth factor weighs in favor of also staying Plaintiff's case against Franklin County. First, although Franklin County is not a criminal defendant and has no Fifth Amendment privilege, *see United States v. White*, 322 U.S. 694, 699 (1944), it may suffer in this civil case if an adverse inference is drawn against Meade from the invocation of his Fifth Amendment privilege. *Stamile v. Cty. of Nassau*, No. CV 10-2632, 2011 WL 1754125, at *3 (E.D.N.Y. Jan. 31, 2011) ("[W]hen one party asserts his or her Fifth Amendment privilege, the adverse inference against that party can also be drawn against another associated with the party invoking the privilege." (citations omitted)).

Additionally, Franklin County's own defense in this civil case is largely intertwined with the factual determinations regarding Meade's actions. Therefore, if Plaintiff's case proceeded against Franklin County without discovery from Meade, Franklin County would "have little to offer in their own defense and hence will be prejudiced by . . . the inability to defend themselves adequately[.]" *Stamile*, 2011 WL 1754125, at *4 (internal quotation marks and citation omitted); *Sikon*, 2020 WL 8838043, at *3 (finding an interest where the non-criminal-defendant party's defense relied heavily on the criminal defendant's ability to

"meaningfully defend" the civil action); *Baird*, 2013 WL 493236, at *4 (citing *Stamile*, 2011 WL 1754125, at *11).

Finally, although the parties could certainly engage in some discovery that would not impact Meade's Fifth Amendment privileges or the criminal case, a complete stay will avoid duplicative discovery and motions practice and thereby promote the efficient use of judicial resources. *Stamile*, 2011 WL 1754125, at *7 (granting stay of *Monell* claims in addition to claims against the criminal defendant in part because "it would make little sense to conduct discovery in bifurcated stages" (citations omitted)); *Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39, 41–42 (S.D.N.Y. 1993) ("To avoid duplication of effort and waste of resources, discovery should also be stayed against the other defendants until the criminal matter pending against Orlando and La Chance is resolved.").[2]

The Court therefore also finds Franklin County has an interest in staying this case. As both Defendants have an interest in staying this case and would be burdened by a stay, this factor weighs in favor of a stay. Due to the fundamental

---

[2] Franklin County further argues that it is undertaking Meade's defense in this civil suit, and it cannot vigorously defend Meade in this case without potentially damaging Meade in his criminal case. Mot. 8–9, ECF No. 6. Read in its entirety, however, this argument really asserts that a vigorous pursuit of *Franklin County's* own defense in this case might adversely affect Meade's criminal trial because it is possible that, in defending against Plaintiff's *Monell* claim, Franklin County will show it had previously disciplined Meade or will otherwise argue that Meade's actions violated County policy, custom, and practice. The Court finds some merit to this additional argument that Franklin County cannot pursue a full-throttle defense to Plaintiff's *Monell* claim without potentially adversely impacting Meade's criminal trial.

importance of Meade's Fifth Amendment rights and the serious nature of the criminal charges he faces, this factor weighs heavily in favor of granting the stay.

### E. The interests of the Court

The fifth factor also weighs in favor of granting a stay.

On one hand, "[t]he Court has an obligation to move its docket, and not to let cases languish before it." *In re Scrap Metal Antitrust Litig.*, No. 1:02-cv-0844, 2002 WL 31988168, at *7 (N.D. Ohio Nov. 7, 2002) (citations omitted); *cf. Smith*, 2021 WL 507881 at *4 ("The convenience of the courts is best served when motions to stay proceedings are discouraged." (internal quotation marks and citation omitted)).

On the other hand, the Court undoubtedly has an interest in ensuring the constitutional rights of criminal defendants are upheld. To the extent both interests are antithetical to one another in a given case, the Court must "balance this interest in expeditiously resolving the cases on its docket with its interest in upholding the rights of one who is criminally accused." *Smith*, 2021 WL 507881, at *4 (internal quotation marks and citation omitted). A limited stay here will further both of the Court's interests.

Furthermore, the Court has an interest in conserving judicial resources and increasing efficiency. Although a stay will delay resolution of this civil matter, "[i]f the stay were not granted, the parties and the Court would have to consume time and resources to determine the precise contours of Defendants' Fifth Amendment rights." *Coley*, 2011 WL 5838190, at *4; *Chao*, 498 F. Supp. 2d at

1040 (finding merit to the argument that a lack of stay would burden the court "with having to deal with Defendants' likely repeated assertions of their Fifth Amendment rights"); *Sikon*, 2020 WL 8838043, at *3 ("It is quite likely that conducting discovery while the criminal investigation is pending, will lead to additional briefing, arguments, and discovery disputes related to Baker's Fifth Amendment invocation and disclosure of documents related to the criminal investigation."). Although diversion of the Court's resources to deal with Fifth Amendment issues applies only to Meade, failing to also stay Plaintiff's case against Franklin County could result in needlessly duplicative discovery and motions practice, which would not be efficient for counsel, the parties, or the Court. *Auramet Int'l*, 2016 WL 4087234, at *4 ("The stay will apply to all Defendants in order to prevent needlessly duplicative proceedings.").

Finally, "the resolution of the criminal proceedings may serve to expedite the civil proceedings, avoiding the needless expense of judicial time and resources." *Abdallah*, 313 F.R.D. at 65; *accord Transworld Mech.*, 886 F. Supp. at 1140 ("[R]esolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required in a criminal prosecution." (citation omitted)). This is true even as to Franklin County, which is not a defendant in the criminal case. *Abdallah*, 313 F.R.D. at 65 (noting resolution of the criminal case can promote settlement not only by the defendant who has been criminally charged "but also by co-defendants who do not face criminal charges." (internal quotation marks and citation omitted)). Even if

resolution of the criminal case does not prompt a settlement of this civil litigation, it might significantly narrow the claims or issues.

Thus, although the Court has an interest in expeditiously deciding this civil suit, the balance of the Court's interests weighs in favor of granting a stay.

**F.     The interests of the public**

The sixth factor is neutral.

It is clear that "[t]he public interest is furthered where individuals' injuries are remedied in a timely manner." *E.M.A. Nationwide, Inc.*, 767 F.3d at 629. The public also has an interest in a factual resolution of Plaintiff's claims against a public officer and public entity. *McCullaugh*, 2009 WL 2929306, at *3 ("The public has a significant interest in learning the facts surrounding [the decedent's] death, the procedures utilized that did or did not result in the death, and whether the officers committed misconduct."). And, in addition to these general interests, the public has a very real interest in being protected from potential violence by Meade. These interests weigh in favor of denying the stay.

At the same time, the public has an interest in "protecting constitutional rights, ensuring the fair administration of criminal justice, and maintaining the integrity of the criminal process." *Ogbazion*, 2012 WL 4364306, at *3 (citation omitted); *Abdallah*, 313 F.R.D. at 64 ("[T]he public interest in effective criminal prosecution generally outweighs any existing civil interests." (citation omitted)). And, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here."

*Transworld Mech.*, 886 F. Supp. at 1140 (citation omitted); *Chao*, 498 F. Supp. 2d at 1040 ("To a large extent, . . . the criminal case will serve to protect and advance [the public] interests. Therefore, a stay of the civil case would not be detrimental to these interests." (citation omitted)). These interests favor granting the stay, and Meade's state-court bond requirements—which include a prohibition against the possession of firearms—protect the public interest in avoiding violence by Meade.

Plaintiff additionally argues the public-interest factor weighs against a stay because the criminal case against Meade does nothing to curtail the offensive policies, practices, and customs of Franklin County. Until a resolution is reached on Plaintiff's *Monell* claim, it asserts, "[t]he alleged pattern of behavior exhibited by Franklin County Sheriff's Office potentially presents a threat to the safety of the entire community[.]" Resp. 7, ECF No. 7.

This argument does not tilt the scales. Unlike in some of the cases cited throughout the parties' briefs, it is not at all clear that Franklin County is currently engaged in a course of action that is causing immediate public harm, and this case is not one where a moderate stay will likely cause harm to the public.

Thus, for the foregoing reasons, the Court finds this factor weighs neither in favor of nor against granting the stay.

### E. Additional Considerations

As mentioned above, courts should also consider the extent to which a defendant's Fifth Amendment rights are implicated and whether granting the stay

will promote the economical use of judicial time and resources. *E.M.A. Nationwide, Inc.*, 767 F.3d at 627–28. The Court already considered these issues as part of its analyses of the fourth and fifth factors. To repeat, the Court concludes that Meade's Fifth Amendment rights are substantially implicated here and that a moderate stay will be the most efficient use of judicial time and resources.

## IV. CONCLUSION

For the above reasons, Defendants have shown a pressing need for delay and that neither Plaintiff nor the public will be harmed by a delay. Two of the factors are neutral, and the rest favor a stay. Considering all the factors, with particular emphasis on the hardship to the parties, the heavy burden on Defendants stemming from the ongoing criminal trial against Meade outweighs Plaintiff's interest in denying a stay. Additionally, judicial economy and the close relationship between Franklin County's and Meade's defenses warrant staying the entire case. Defendants' motion to stay, ECF No. 6, is therefore **GRANTED**.

The Court will not, however, stay the case indefinitely; this case is **STAYED** only until the conclusion of Meade's criminal trial. The Parties are **ORDERED** to provide status reports to the Court every **NINETY** days and to notify the Court when Meade's' criminal case has concluded.

**IT IS SO ORDERED.**

*Michael H. Watson*

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**